[Civ. No. 3539. Third Appellate District.—June 19, 1928.]

PHILIP BOMAR et al., Respondents, v. MOUNT OLIVE
MISSIONARY BAPTIST CHURCH (a Corporation)
et al., Appellants.

Sylvester Isonberg and Hugh E. Macbeth for Appellants.

I. Henry Harris for Respondents.

PLUMMER, J.—The second amended complaint filed in this cause sets forth that the plaintiffs are the duly elected, qualified, and acting trustees of the Mount Olive Missionary Baptist Church, an unincorporated religious association having its principal place of worship at number 3064 East First Street, in the city and county of Los Angeles; that the membership of said church consists of ninety-two persons, of whom seventy-one are adults; that the association was organized and founded on or about the year 1909; that at the time of its organization it was agreed that Hiscox's Guide and Directory for Baptist Churches should be, and the same was, adopted as the rules by which the temporal affairs of the church should be guided; that since the organization of the church herein referred to, it has been governed as an unincorporated religious association in conformity with the rules and regulations set forth in Hiscox's Guide; that the rules and regulations set forth in said Guide provide that the property of the church shall be held in the name of trustees, for the uses and benefit of the church; that on or about the eleventh day of April, 1916, said unincorporated religious association acquired title to lot 8 in a certain tract known as the Corcoran Tract in Los Angeles County, and thereafter, and on or about the seventeenth day of May, 1923, acquired title to lot 7 in said Corcoran Tract, and thereafter, and on or about the seventeenth day of November, 1923, lot 9 in said Corcoran Tract was purchased by said unincorporated religious association; that the title to lot 8 was taken in the names of H. T. Baucum, Charles Reed, and J. Buchanan; that the title to lots 7 and 9 was taken in the names of R. W. Willis, W. L. Bell and Charles Reed as trustees for said unincorporated religious association; that the value of said lots was about $15,000; that the building in which the unincorporated religious association held its services was and is situated upon lot 8 of said Corcoran Tract; that according to Hiscox's Guide and Directory the annual meeting of the church for the appointment of a pastor, the election of trustees, and the consideration of church affairs, was appointed to be held on the Friday next preceding the first Sunday in December of each year, and the installation of the pastor and

the officers was appointed to take place on the first Friday preceding the first Sunday in January following the election, as just stated. The complaint then sets forth the manner in which the right hand of fellowship may be withdrawn from a member and the members dismissed from such unincorporated religious association by the presentation of charges and the giving of an opportunity to be heard and a majority vote of a quorum of the church members required to effect a dismissal. The complaint then alleges that in the month of June, 1924, the defendants, in order to gain possession of the property owned by the unincorporated religious association, formed a religious corporation, and then and there represented to the secretary of state of the state of California that they were authorized by said unincorporated association to incorporate under the laws of the state of California. That such statement was false. That no notice was given to a majority of the members of said association of any intention to form a religious corporation. That no meeting of the church was ever held which authorized the incorporation of said church. That said incorporation was brought about by said defendants and their families, including in all not over eighteen or twenty persons. That said persons met and agreed to form a corporation, and that upon the representations of the defendants Willis, Bell, and Hutchinson a charter was granted by the state of California to the defendant, the Mount Olive Missionary Baptist Church, Incorporated. That thereafter, and in the month of June, 1924, the said defendants Willis, Bell, and Charles Reed, without any authority of said church or of a majority of the members thereof, conveyed lots 7 and 9 of said Corcoran Tract to the defendant-corporation; that thereafter the defendants represented to H. T. Baucum, J. Buchanan, and Charles Reed that it was the wish of the unincorporated association that lot 8 of said Corcoran Tract should be deeded to said corporation, and said lot was thereupon so deeded; that at the time of the execution of said deed the said H. T. Baucum and J. Buchanan were unaware that there was any corporation or that they were conveying said lot 8 to any corporation. That thereafter the corporation so organized adopted by-laws, and purporting to follow the by-laws so adopted, purported to expel eighteen members from said

church, no notice thereof being given and no opportunity being had by the defendants for any hearing. The complaint then sets forth in detail that the proceedings herein referred to were all taken and had by the defendants for the purpose of wrongfully securing possession of the property of said unincorporated religious association. The prayer of the complaint asks that the property referred to herein be reconveyed to the trustees of said unincorporated religious association; that it ·be decreed that the plaintiffs are the duly elected, qualified, and acting trustees of the Mount Olive Missionary Baptist Church, an unincorporated religious association; that defendants be required to account for all moneys received and disbursed by them; that W. L. Hutchinson be restrained from acting as pastor of said church; that the defendants be required to turn over to the plaintiffs all the books and registers belonging to the Mount Olive Missionary Baptist Church as an unincorporated religious association. The answer denies *seriatim* all the allegations of the complaint.

The court found all the allegations contained in specifications A, B, C, D, E, F, G, H, I, and J of paragraph 10 of the amended complaint to be true, which includes all the allegations by which the complaint sets forth that the defendants conspired, contrived, and wrongfully and fraudulently transmuted the title of the property belonging to the unincorporated Mount Olive Missionary Baptist Church to the corporation organized by them, as herein referred to. The second finding of the court is to the effect that it was stipulated that the accounting of moneys asked for might be withdrawn without prejudice to the institution of another action. The third finding of the court is to the effect that it was admitted at the trial that the attempted expulsion of members was without authority and was void. The fourth finding is to the effect that at all the times mentioned in the complaint the plaintiffs owned the real property mentioned therein, and that the building situate thereon was occupied by and used as the place of worship first by the Mount Olive Missionary Baptist Church, an unincorporated religious association, and, then, after the acts herein referred to and at the time of the trial, was in the possession of the defendant Mount Olive Missionary Baptist Church, a corporation. The fifth finding is also to the

effect that the records of said church belonged to the Mount Olive Missionary Baptist Church as an unincorporated religious association. As a result of said findings and the conclusions of law based thereon, reconveyance of the real property herein referred to was ordered, and the plaintiff Mount Olive Missionary Baptist Church, as an unincorporated association, awarded possession of the property. From this judgment the defendants appealed and assigned five different reasons why the judgment should be reversed, to wit: First: That the trial court had no jurisdiction, at the suit of private individuals, to determine whether the incorporation was legal or illegal; second: That the plaintiffs were estopped to deny the incorporation of the church; third: That the court erred in finding that the plaintiffs were the duly elected, qualified, and acting trustees of said religious society as an unincorporated religious association; fourth: That the findings from the first to the ninth, with the exception of the fifth, are unsupported by the evidence; fifth: That there was a fatal variance between the material allegations of plaintiffs' complaint and the proofs.

■    As we read the record, it does not seem to us necessary to follow the argument of the appellants or the authorities cited to sustain the objection that the court had no jurisdiction to inquire as to whether the incorporation was legal or illegal. This case does not present for adjudication legality or illegality of the alleged incorporation. The only question involved is whether a corporation formed under the circumstances disclosed by the record and as formed by the court, by a small minority of the members of the association, without the authorization of a majority of the unincorporated religious association and the obtaining of conveyances to the real property held in trust by certain individuals for the benefit of the unincorporated religious association, without any previous authorization for such transfer, may be compelled to reconvey the property to the duly elected, qualified, and acting trustees of the unincorporated religious association, found by the court to be the beneficial owner thereof. The complaint sets forth that the forming of the corporation was simply a device or expedient for obtaining possession of the property by a few members thereof, to the intent and purpose that the pastor and a few members thereof might control the

temporal affairs of the church, and the findings of the court are to the effect that the allegations setting forth these facts contained in the complaint are true and correct. ▇ The record shows that at the time of the occurrences referred to in the complaint there were 71 adult members; that out of that number 54 went on the stand and testified that no notice of any meeting to consider the question of incorporation was ever given as required by Hiscox's Guide and Directory for Baptist Churches. This Guide required public notice to be given by announcement from the pulpit by the pastor at the time public services were being held by the church. The record discloses the names of 10 persons only who were present at the time the incorporation was decided upon. The defendants called some ten or a dozen witnesses who testified that notice was given and that other persons were present than the names of those stated at the time the decision was had by those who assembled on or about the second day of June, 1924, to consider the question of incorporation. Thus, the finding of the court to the effect that the Mount Olive Missionary Baptist Church, an unincorporated religious association, never authorized the formation of the corporation, is amply sustained by the evidence. Fifty-four of the adult 71 members testified that they had no notice and were not present. The transcript shows that the record of the members of the unincorporated association is evidenced by signed cards, so that it was a very easy matter to ascertain and present in the testimony the names of all of those who were present at the gathering when incorporation was decided upon, and also to present testimony as to who were present, if any others were actually present, than the 10 names set forth in the testimony of one of the witnesses called by the defendants. Our attention has not been called to any testimony showing that the Mount Olive Missionary Baptist Church, as an unincorporated religious association, ever authorized the transfer of the properties of the church from the trustees, who held the title thereto, to the incorporation. There is also testimony in the record to the effect that no regular meeting was held on the second day of June, 1924, as is purported to have been done; that only a few persons were present, and that there was no truth in the recital of the certificate attached to the articles of incorporation that a regular meeting was

held and directors elected, and it would appear that no regular business meeting of the church could be held other than the annual meeting provided for, without giving notice thereof by announcement from the pulpit for the time and place of such meeting. The rules of the church provided for the holding of an annual meeting on the Friday next preceding the first Sunday in December of each year. The complaint so alleges, and there is no denial of this allegation in the answer. The meeting to which we have referred, at which the incorporation of the defendant was considered, was held in the month of June and not at a time provided in the rules of the church for the holding of an annual business meeting, or for the holding of any meeting other than that which, in ordinary language, would be called a special meeting.

We do not deem it necessary to set forth herein the testimony in the transcript indicating a fraudulent purpose on the part of the defendants, for the simple reason that, though the testimony may show actual fraud, actual fraud will nevertheless be presumed from the fact that one in whom confidence has been reposed has availed himself or benefited himself of the trust at the expense of the trusting or confiding party. (*Lezinsky* v. *Mason,* 185 Cal. 240 [196 Pac. 884]; *Williams* v. *Lockwood,* 175 Cal. 598 [166 Pac. 587].) As we have shown from the record the church, as a church, never authorized either the incorporation or the transfer of the property by the trustees who held title thereto for the benefit of the chuch, and the property having been transferred without any such authorization, it amounted to an actual fraud upon the church and laid the basis for an action to compel reconveyance. The contention of the appellants that it was necessary for the trustees holding the title to the property for the benefit of the church, to convey the same to the incorporation to protect the title, is wholly unfounded. The case of *Brittenbaker* v. *Buck,* 58 Cal. App. 738 [209 Pac. 264], settles the question as to the power of an unincorporated religious association to take title to property in the name of individual members as trustees.

Nor do we find any merit in the contention of the appellant that the trial court had no jurisdiction of the cause presented to it for determination. The attack is not made upon the corporation as a corporation. So far as

the judgment of the court is concerned, the persons associated in the scheme of bringing the corporation into existence may go on with their corporation unhindered. The complaint is founded upon the wrongful acts of such persons in creating a corporation in whom the property of the church might be vested and the control of the temporal affairs of the church lodged, in such a manner as to deprive the body of the church of any voice or control in its management and to dispossess the church of its property. The gravamen of the charge is that all of these acts were performed by a very small minority of the church, and that the church, as an unincorporated religious association, never authorized or consented to any of them. To regain possession of the property thus taken away from the unincorporated religious association is not an attack upon the corporation as a corporate entity, but only seeks to undo the wrong found by the court to have been perpetrated. Under such circumstances *quo warranto* proceedings instituted by permission of the attorney-general were and are wholly unnecessary. The plaintiffs have no interest in the existence of the corporation; they seek only the restoration of what the court has found to be their own.

The case of *Hendryx* v. *People's United Church Co.*, 42 Wash. 336 [7 Ann. Cas. 764, 4 L. R. A. (N. S.), 1154, 84 Pac. 1123], is directly in point. In the Hendryx case there was involved an intent or purpose to wrongfully obtain possession of church property. It was there held that an action to cancel a deed would lie, and that no question as to ecclesiastical matters was presented for consideration. A number of cases are there cited which we do not need to review. In one of the cases we find the following pertinent language: "The bald question here is, can a man or set of men or a majority of the church organization, by chicanery, deceit and fraud, divert the property of a church organization to a purpose entirely foreign to the purposes of the organization, for their own selfish benefit, whether by expulsion of members or in any other fraudulent manner. Neither the law nor public policy will sustain such a rule. Fraud vitiates all transactions, and if members are expelled for a fraudulent purpose to carry out a fraudulent scheme of expulsion, it is a void act and of no force or effect whatever. Equity will compel fair dealing, disregarding all

forms and subterfuges, and looking only to the substance of things.'' (*Nance* v. *Busby*, 91 Tenn. 303 [15 L. R. A. 801, 18 S. W. 874].) In the instant case the court has found that the persons who contrived to secure possession of the church property constituted only a small minority of the membership.

Another case relied upon by the appellants but which we think supports the action of the court in the instant case, is that of *Hatfield* v. *De Long*, 156 Ind. 207 [83 Am. St. Rep. 194, 51 L. R. A. 751, 59 N. E. 483]. The citations found in the opinion of this case are exceedingly numerous and show that the assertion of jurisdiction in such a case as the one at bar is not an interference with the control of the church over its members, and is a matter dealing purely with property and property rights. The findings show a stipulation in open court to the effect that the attempted expulsion of 18 members was absolutely void, and therefore we pass this question by. No question of estoppel was pleaded, nor is there anything in the record showing that the church, as a church, until shortly before the institution of this action, became aware that any incorporation had ever been formed, or that conveyances had been made of the property.

There does not seem to be any merit in the appellant's contention that the plaintiffs have no capacity to sue. This alleged defect in the pleadings was not raised by demurrer, but the fact which we have hereinbefore referred to in this opinion, we think established the capacity of the plaintiffs to maintain this action. The court found, upon sufficient evidence, that the plaintiffs were the duly elected, qualified and acting trustees of the Mount Olive Missionary Baptist Church, an unincorporated religious association; that they were elected at the regular meeting of the church held at the church at the time and place provided for in the rules and regulations governing the church. The appellants contend that this finding was based upon the testimony of only one witness. This statement is controverted by the respondents, but if the necessary facts were testified to in this respect only by one witness, it would place it beyond the power of this court to disturb such finding. While not cited as determinative of any questions involved herein, we think the following taken from the opinion of the court

in the case of *Wheelock* v. *First Presbyterian Church,* 119 Cal. 477 [51 Pac. 841], pertinent: "Notwithstanding incorporation, the ecclesiastical body is still all-important. The corporation is a subordinate factor in the life and purposes of the church proper." In any event, as held in that case, the corporation would be only the agent or instrument for holding title to property and managing its temporal affairs. The ecclesiastical body would still remain the real church. Under the circumstances disclosed, we think, in the present case, the unincorporated religious association known as the Mount Olive Missionary Baptist Church at all times constituted the body entitled to control both its ecclesiastical and temporal affairs, and that the incorporation never acquired any legal or ecclesiastical right to the control of either of them.

The judgment of the trial court is affirmed.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 19, 1928, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 16, 1928.

All the Justices concurred.