Filed 9/14/23  Lindholm v. Apollo Equine Transport CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROBERT LINDHOLM et al.,<br><br>Plaintiffs, Cross-Defendants and Appellants.<br><br>v.<br><br>APOLLO EQUINE TRANSPORT, INC., et al.<br><br>Defendants, Cross-Complainants and Respondents. | B308356<br><br>(Los Angeles County Super. Ct. No. YC073049) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gary Y. Tanaka, Judge.  Affirmed.

Robert Lindholm, in pro per., for Plaintiff, Cross-Defendant and Appellant Robert Lindholm.

Carolyn Lindholm, in pro per., for Plaintiff, Cross-Defendant and Appellant Carolyn Lindholm.

Hersh and Hersh, Nancy Hersh and Joseph Boyle for Defendants, Cross-Complainants and Respondents.

# INTRODUCTION

Robert Lindholm hired Apollo Equine Transport, Inc. (Apollo) and European Horse Services (USA), Inc. (EHS) to transport five foals from Europe to Los Angeles.[1]  Robert and his wife Carolyn, an attorney with 40 years of litigation experience, received the foals but refused to pay for the horses' transportation.  Instead, the Lindholms sued Apollo and EHS; Apollo in turn sued the Lindholms.  Eventually the parties agreed to a settlement requiring the Lindholms to pay Apollo and EHS $20,000.  But the Lindholms—apparently unhappy with the settlement—again refused to pay, which prompted Apollo and EHS to file a motion to enforce the settlement under Code of Civil Procedure section 664.6.[2]  The trial court granted the motion and entered judgment enforcing the settlement.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Robert Hires Apollo and EHS To Transport Foals from Europe to the United States; Lawsuits Follow*

After Carolyn purchased five foals located in Germany, the Netherlands, and Belgium, Robert hired Apollo, EHS, and BVBA

---

[1]  "A 'foal' is a baby horse of either sex."  (*Giles v. C.I.R.* (2006) 91 T.C.M. (CCH) 684, fn. 5.)

[2]  Undesignated statutory references are to the Code of Civil Procedure.

2

European Horse Services (BVBA)[3] to transport the foals to Los Angeles. EHS and BVBA agreed to arrange the foals' transportation to Los Angeles International Airport, and Apollo agreed to handle the "customs and immigration process," a two- to three-day process that included transporting the foals for quarantine upon their arrival at the airport, completing all required import forms, and ensuring the foals received all necessary medical tests.

Robert initially wanted the foals to be transported from Amsterdam to Los Angeles on a flight operated by KLM—an airline that, according to the Lindholms, "specialized and was experienced in flying foals . . . ." When EHS and BVBA told Robert there were no available KLM flights for several weeks, however, Robert "reluctantly accepted" that the foals could be transported from Luxembourg on a flight operated by the airline Cargolux. Ultimately, the Lindholms received the foals in Los Angeles. Apollo sent the Lindholms an invoice for $15,250 for its services, and EHS and BVBA sent the Lindholms a separate invoice for $20,115.81.

The Lindholms refused to pay anything to anyone. When Apollo, EHS, and BVBA demanded payment, the Lindholms filed this action against Apollo and EHS. The Lindholms alleged that "[t]he flight from Luxemburg [*sic*] airport to Los Angeles was not a direct flight . . . as was contracted for," that "the cost of utilizing Cargolux to transport the Horses . . . was not for a price similar

---

[3] BVBA is a Belgian Company whose principal, Filip Vande Capelle, is also the chief executive officer of EHS. EHS contends it was BVBA—not EHS—that entered into the relevant agreements with Robert to transport the foals. Because for purposes of this appeal it does not matter which company contracted with Robert, we assume it was both EHS and BVBA.

to that charged by KLM for similar services," and that the total cost of transporting the horses "should not have exceeded" $10,000. The Lindholms sought $25,365.81 in damages—the difference between the total amount Apollo and EHS collectively charged and the amount the Lindholms claimed the defendants "should" have charged. Apollo filed a cross-complaint against the Lindholms to recover the $15,250 they owed for Apollo's services. BVBA filed a separate lawsuit in Belgium against the Lindholms to recover the money owed for its services (the Belgium lawsuit).

B. *The Parties Reach a Global Settlement, and the Trial Court Grants a Motion by Apollo and EHS To Enforce It*

The Lindholms, Apollo, EHS, and BVBA ultimately reached a settlement resolving all their claims. Under the terms of the written settlement agreement, the Lindholms agreed they would make a "lump sum payment" of $20,000 to Apollo, EHS, and BVBA, and the parties to this action agreed they would file requests for dismissal with prejudice of the complaint and cross-complaint. BVBA similarly agreed it would "dismiss the Belgium Lawsuit with prejudice at the earliest opportunity possible which [counsel for BVBA] has advised is September 29, 2020 at the first pleading date in the Belgium Lawsuit." Robert, Carolyn, and representatives of Apollo, EHS, and BVBA signed the settlement agreement.

And yet, the Lindholms again refused to pay Apollo, EHS, and BVBA, which prompted Apollo and EHS to file a motion to enforce the settlement under section 664.6. The Lindholms opposed the motion, arguing the settlement agreement failed to "state material terms" because the agreement, while specifying the Lindholms had to pay a total of $20,000, did not specify how

4

much Robert, individually, and Carolyn, individually, had to pay, nor did the agreement specify how much Apollo, EHS, and BVBA were each to receive. The Lindholms also complained that they had asked counsel for Apollo, EHS, and BVBA to translate certain documents the Lindholms received about the Belgium lawsuit and to explain why BVBA could not dismiss the Belgium lawsuit before September 29, 2020, but that they received no response. The Lindholms contended opposing counsel's conduct demonstrated BVBA had "something to hide" or did not intend to dismiss the Belgium lawsuit. The Lindholms also asserted various theories for not enforcing the settlement, including "no meeting of the minds," mistake, anticipatory breach, and fraud.

The trial court granted the motion to enforce the settlement. The court ruled that the terms of the settlement were sufficiently clear because they "require[d] a payment by the Lindholms to [Apollo and EHS] in exchange for a dismissal of the Cross-Complaint" and that "[t]he fact that the Agreement does not specifically delineate how much of the payment would be apportioned between the . . . parties" was immaterial. The court also rejected the Lindholms' theories based on the conduct of counsel for Apollo, EHS, and BVBA relating to the Belgium lawsuit. The court ruled there was a meeting of the minds because the settlement agreement "specifically took into account and did attempt to incorporate the Belgium lawsuit" and "specifically calls for the Belgium lawsuit to be dismissed . . . ." The court explained that, to the extent the Lindholms were complaining about other conduct "occurring in the Belgium lawsuit," the Lindholms' "recourse would be to pursue their rights" elsewhere. The court entered a judgment that incorporated the terms of the settlement agreement, and the Lindholms timely appealed.

5

## DISCUSSION

A.      *Applicable Law and Standard of Review*

Section 664.6, subdivision (a), states:  "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement."  "It is for the trial court to determine in the first instance whether the parties have entered into an enforceable settlement.  [Citation.]  In making that determination, 'the trial court acts as the trier of fact, determining whether the parties entered into a valid and binding settlement.  [Citation.]  Trial judges may consider oral testimony or may determine the motion upon declarations alone.'"  (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360; see *Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1454; *Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533.)

"A trial court's factual findings on a motion to enforce a settlement pursuant to section 664.6 are subject to limited appellate review and will not be disturbed if supported by substantial evidence."  (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 790; see *J.B.B. Investment Partners, Ltd. v. Fair* (2014) 232 Cal.App.4th 974, 984; *Chan v. Lund* (2010) 188 Cal.App.4th 1159, 1165.)  "Consistent with the venerable substantial evidence standard of review, and with our policy favoring settlements, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that these parties entered into an enforceable settlement agreement and its order enforcing that agreement."  (*J.B.B. Investment Partners*, at p. 984; accord, *Osumi v. Sutton, supra*, 151 Cal.App.4th at

6

p. 1360; see *Steinman v. Malamed* (2010) 185 Cal.App.4th 1550, 1556 [in reviewing the trial court's findings on a motion to enforce a settlement under section 664.6, we "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor"].) "In instances involving questions of law," however, "the trial court's decision is not entitled to deference and will be subject to independent review." (*Chan*, at p. 1166; see *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1253.)

B.      *The Settlement Agreement Did Not Lack Material Terms*

The Lindholms first contend, as they did in the trial court, the settlement agreement "fails to state . . . material terms" because it does not specify how much Robert, individually, or Carolyn, individually, had to pay and because it did not specify how much each of Apollo, EHS, and BVBA was to receive. The trial court correctly ruled the settlement agreement contained the necessary material terms.

Before the court may enter judgment under section 664.6, "two key prerequisites must be satisfied. First, there must be contract formation. The litigants must first agree to the material terms of a settlement contract before a judgment can be entered 'pursuant to the terms of the settlement.' If no meeting of the minds has occurred on the material terms of a contract, basic contract law provides that no contract formation has occurred." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 797; see *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 215 ["'failure to reach a meeting of the minds on all material points prevents the formation of a contract'"].) Second, there must be a "writing signed by the parties" [or oral stipulation in

7

court] that contains the material terms." (*Weddington*, at p. 797.) Here, the settlement agreement contained the material terms required to form a contract. The Lindholms agreed to pay Apollo, EHS, and BVBA $20,000; the parties agreed to dismiss the complaint and the cross-complaint in this action; and BVBA agreed to dismiss the Belgium lawsuit by September 29, 2020. (See *Rohrbacher v. Aitken* (1904) 145 Cal. 485, 488 [dismissal of an action constitutes consideration for a settlement agreement]; *Armstrong World Industries, Inc. v. Superior Court* (1989) 215 Cal.App.3d 951, 957 ["forbearance from exercising a legal right constitutes legal consideration"]; *Westwood Temple v. Emanuel Center* (1950) 98 Cal.App.2d 755, 759 [dismissal of an action is "valid consideration for" a settlement agreement].) The settlement agreement also specified how the Lindholms were supposed to tender the payment: to "counsel for Apollo & EHS USA, Hersh & Hersh . . . no later than ten (10) business days after counsel for Lindholm . . . receive[d] a fully executed copy of th[e] settlement agreement . . . ."

That the settlement agreement did not specify how much each of the Lindholms was supposed to pay, or how Apollo, EHS, and BVBA would divvy up the settlement amount, was, as the trial court ruled, immaterial. "An obligation imposed upon several persons, or a right created in favor of several persons, may be: [¶] 1. Joint; 2. [¶] Several; or, [¶] 3. Joint and several." (Civ. Code, § 1430.) "Where all the parties who unite in a promise receive some benefit from the consideration "—as the Lindholms did—"their promise is presumed to be joint and several." (*Id.*, § 1659; see Civ. Code, § 1660 ["A promise, made in the singular number, but executed by several persons, is presumed to be joint and several."]; *DKN Holdings LLC v. Vaerber* (2015) 61 Cal.4th 813, 820.) And "a right created in favor

8

of several persons"—like the right of Apollo, EHS, and BVBA to receive payment from the Lindholms under the settlement agreement—"is presumed to be joint" absent "express words to the contrary." (Civ. Code, § 1431; see *Cober v. Connoly* (1942) 20 Cal.2d 741, 744 [promissory note containing an "unqualified general promise" by a husband and wife to pay three individuals "create[ed] a joint right in favor of the three payees"]; Rest.2d Contracts § 297, subd. (2) ["Except to the extent that a different intention is manifested or that the interests of the obligees in the performance . . . are distinct, the rights of obligees of the same performance are joint."].) The settlement agreement stated who was to pay (the Lindholms), how much ($20,000), and to whom (Apollo, EHS, BVBA, through their attorneys). That was enough. (See *Patel v. Liebermensch* (2008) 45 Cal.4th 344, 349 [""[t]he law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if [they] can be ascertained""].) A settlement agreement is not unenforceable simply because it includes joint obligors and joint payees.

    C.     *Substantial Evidence Supported the Trial Court's Rulings Rejecting the Lindholms' Other Reasons for Trying To Avoid the Settlement Agreement*

The Lindholms' remaining arguments are all premised on their theory that BVBA does not intend to dismiss the Belgium lawsuit or that Apollo, EHS, and BVBA otherwise have "something to hide with regard to the Belgium lawsuit." As discussed, the Lindholms contend counsel for Apollo, EHS, and BVBA did not translate certain documents the Lindholms received or explain why BVBA could not dismiss the Belgium

9

lawsuit before September 29, 2020.  According to the Lindholms, these purported facts show BVBA does not intend to abide by the terms of the settlement agreement.  As they did in the trial court, the Lindholms assert that "there was no meeting of the minds" and that legal doctrines such as mistake, anticipatory breach, and fraud preclude enforcing the agreement.

Substantial evidence supported the trial court's rulings that there was a meeting of the minds and that there was no mistake, anticipatory breach, or fraud.  (See *J.B.B. Investment Partners, Ltd. v. Fair*, *supra*, 232 Cal.App.4th at p. 984 ["whether the parties had a meeting of the minds regarding settlement . . . is a factual question" that "will not be disturbed if supported by substantial evidence"]; *Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 519, fn. 10 ["whether the conduct of" a party to a contract "was an implied repudiation is a question for the trier of fact"];[4] *Miller v. St. Andre* (1959) 175 Cal.App.2d 259, 262 [in action to set aside contract, "[b]oth fraud and mutual mistake are questions of fact"].)  Most importantly, the settlement agreement required BVBA to dismiss the Belgium lawsuit "at the earliest opportunity possible which [counsel for BVBA] has advised is September 29, 2020 at the first pleading date" in the lawsuit.  That BVBA signed a written promise to dismiss the lawsuit is pretty good evidence it intended to do so. (See *Zhang v. Superior Court of Los Angeles County* (2022) 85 Cal.App.5th 167, 180 [the "'best indicator of the parties' intent

---

[4]     "Breach by repudiation is referred to in the case law as an 'anticipatory breach.'"  (*Central Valley General Hospital v. Smith*, *supra*, 162 Cal.App.4th at p. 514; see *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 489.)

10

in a written contract is the words they chose for the agreement'"];
*Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022)
77 Cal.App.5th 643, 654 [same].)

In addition, Belgium counsel for BVBA sent a letter (in English) to counsel for the Lindholms[5] explaining why BVBA could not dismiss the lawsuit until September 29, 2020. He explained that the court in Belgium had already set a date "for the exchange of written submissions," and that "[b]oth parties ([BVBA] and the Lindholm[s]) must write a letter to the Belgian court informing the Belgian court of their settlement and their joint decision to dismiss and discontinue the Belgian proceedings." Counsel for BVBA explained that, "because the pleading date for the Belgian Court to deal with this matter is only scheduled on 29 September 2020, the dismissal of the proceedings will only be enacted by the court at that date." Even if the trial court could have inferred BVBA did not intend to dismiss the Belgian lawsuit based on the Lindholms' failure-to-translate and failure-to-provide-additional-information theories—a dubious proposition given the written settlement agreement and counsel for BVBA's written explanation (see *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 657 ["undisclosed

_____

[5] The Lindholms were represented by counsel during the settlement negotiations. Their attorney, however, filed a motion to be relieved as counsel shortly before Apollo and EHS filed their motion to enforce the settlement agreement, stating in his supporting declaration: "There is a break down in the attorney-client relationship" because a "settlement agreement has been signed in this matter by all parties and all counsel, however, the clients and present counsel have a fundamental disagreement concerning same which cannot be resolved." The Lindholms also refused to pay their attorney.

contractual intent . . . is not substantial evidence"]; see also *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 30 ["something more than nonperformance is required to prove the defendant's intent not to perform his promise"])—we review the evidence in the light most favorable to the court's order enforcing the settlement and the judgment. (See *J.B.B. Investment Partners, Ltd. v. Fair*, *supra*, 232 Cal.App.4th at p. 984.) There was substantial evidence BVBA intended to dismiss the Belgium lawsuit once the Lindholms made the payment required by the settlement agreement. That opposing counsel did not provide the Lindholms additional information or translation services is not a reason to reverse the order enforcing the settlement or the resulting judgment.

## DISPOSITION

The judgment is affirmed.  Apollo and EHS are to recover their costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


MARTINEZ, J.

13