[Civ. No. 26910.   Second Dist., Div. Three.   April 21, 1964.]

EMIL BARBER et al., Plaintiffs and Respondents, v. ROBERT IRVING et al., Defendants and Appellants.

George L. Vaughn, Jr., for Defendants and Appellants.

Robert W. Zakon for Plaintiffs and Respondents.

FILES, J.—The problem here is to determine what relief is appropriate when a minority of the members of an unincorporated church incorporates the group contrary to the wishes of the majority.

The background, as it appears from the trial court's findings and from the evidence most favorable to the plaintiffs, will be stated.

The Greater Gethsemane Missionary Baptist Church was formed by the oral agreement of its founders on May 14, 1955, in Los Angeles. The association has never had any writ-

ten constitution or bylaws. It never affiliated with any other organization and never recognized or followed any procedures of other Baptist groups in the handling of its administrative affairs. By custom and usage this unincorporated church decided all important administrative matters by majority vote of the membership, including the selection and removal of boards of trustees and boards of deacons.

When a person became a member of the church his name would appear in a card file or in the minute book, or his name would appear both places. Membership could be terminated only by death, expulsion, or letter of transfer to another church.

At the time the church was founded the members selected Charles Jackson as their pastor. He served continuously in this position until the events hereinafter mentioned. The group acquired land and a building which was used as their place of worship. This property was taken in the name of Charles Jackson and others who were acting as trustees for the church.

On May 29, 1961, the unincorporated association, by a majority vote, decided to incorporate the church. The deacons employed an attorney, who drafted articles of incorporation. These proposed articles were presented to the church for approval at a meeting held on August 28, 1961. There was opposition by some of the members because the proposed charter would establish practices quite different from the customs which had been followed in the past. For example, the proposed articles provided that all expenditures must be approved by the board of deacons, and that a deacon might be removed from office "only for failure in his trust." The custom had been that deacons could be removed at any time by the membership.

At the August 28 meeting the membership voted against approving the proposed charter. Nevertheless, the faction favoring incorporation went ahead. Two of the seven proposed incorporators refused to sign the articles and two others were named in their place. Articles of incorporation were filed with the Secretary of State on October 25, 1961, for a corporation known as The Greater Gethsemane Missionary Baptist Church, organized under the General Nonprofit Corporation Law (Corp. Code, § 9000 et seq.).

The articles of incorporation never received a majority vote of the members either before or after they were filed.

Although the articles were not filed until October, the group who were to be the original directors of the corpora-

tion from August 14, 1961, conducted themselves as though they were the board of directors of the church corporation. On August 14, 1961, Charles Jackson executed a deed to all of the church property to ''The Board of Deacons of the Gethsemane Missionary Baptist Church, also known as The Greater Gethsemane Missionary Baptist Church, acting in lieu of and as proxy of and as trustee pro tem of the Board of Trustees of said church.'' The board of trustees referred to in this deed was the board of the proposed corporation. On September 11, 1961, a letter was sent to Reverend Charles Jackson declaring that the board of trustees of the incorporated, Greater Gethsemane Missionary Baptist Church had resolved to terminate his services ''as of the 30th day after this date.'' On September 27, 1961, an attorney purporting to represent ''The Board of Directors'' notified Reverend Jackson that his relationship with the church was ''dissolved as of September 24, 1961.''

Commencing October 1, 1961, the corporate directors appointed L. C. Jackson as pastor of the church.

The membership never at any time voted to dismiss Reverend Charles Jackson as pastor or to appoint L. C. Jackson in his place.

This action was commenced on December 18, 1961, by 60 individuals who joined together as plaintiffs and alleged that they ''are a majority of the members of said church.'' The complaint names as defendants nine individuals (seven of whom are the board of directors of the new corporation) and the corporation itself.* The complaint alleges the existence of a number of controversies between the parties and asks for declaratory relief.

The action was tried before the court, sitting without a jury. At the close of the evidence the judge made an interlocutory order that an election be conducted in which the members would be asked to vote on the question, ''Shall the Articles of Incorporation presented to the church on August 28,

---

*The record shows that all of the defendants first appeared by a joint demurrer to the complaint. After this demurrer was overruled, an answer was filed on behalf of defendant Robert Irving only. It does not appear that any other defendant answered the complaint. No point of this was made in the trial court, and we assume, therefore, that the other defendants in effect adopted the Irving answer.

The complaint does not allege that plaintiffs are suing in a representative capacity, but no objection has been made either in the trial court or in the briefs on appeal to the absence of other parties who might have an interest in the subject matter.

1961, be adopted?'' The order also provided that at the same time the members would elect a group of seven persons to act as directors of the corporation or, in the alternative, to act as trustees of the property of the unincorporated association.

The attorney for the plaintiffs and the attorney for defendants were appointed to act as referees to conduct the election.

The election was conducted on September 23, 1962. The vote was opposed to incorporation, and seven trustees were elected.

The court then entered a judgment containing the following declarations:

The Greater Gethsemane Missionary Baptist Church was never properly incorporated.

All purported acts of the corporation are null and void.

The articles of incorporation are ''hereby stricken from the rolls of California corporations.''

The real property belongs to the unincorporated association, and title vests in the trustees who were elected on September 23, 1962.

Charles Jackson is declared to be the pastor of the church.

In addition, the judgment enjoins defendants and L. C. Jackson from conducting religious services on the premises and from interfering with the services conducted by Charles Jackson, and L. C. Jackson is enjoined from holding himself out as pastor of the church.

Defendants have appealed from the judgment.

■ The first point urged here by defendants is that the trial court should not have decreed the nonexistence of the corporation. The authorities support them on that proposition.

■ ''The jurisdiction of the superior court to decree a dissolution of any corporation exists only by virtue of statutory authority. It does not possess this authority by virtue of its inherent general jurisdiction in equity (*Neall* v. *Hill*, 16 Cal. 145 [76 Am.Dec. 508]; *French Bank Case*, 53 Cal. 495; *Havemeyer* v. *Superior Court*, 84 Cal. 327 [24 P.121, 18 Am.St.Rep. 192, 10 L.R.A. 627]), either at the suit of an individual (*Folger* v. *Columbian Ins. Co.*, 99 Mass. 267 [96 Am.Dec. 747]), or at the suit of the state (*Attorney General* v. *Utica Ins. Co.*, 2 Johns. Ch. (N.Y.) 370), and, as its jurisdiction is derived from the statute, it is limited by the provisions of the statute, both as to the conditions under which it may·be invoked, and the extent of the judgment which it may make in the exercise of this jursidiction.'' (*State Inv. & Ins. Co.* v. *Superior Court*, 101 Cal. 135, 146 [35 P. 549].)

Corporations Code, section 313, provides: "In any action at law, other than one in the nature of quo warranto, the original articles or certificate of incorporation of a corporation, or a copy of either thereof, duly certified by the Secretary of State, is conclusive evidence of the formation of the corporation and prima facie evidence of its corporate existence."

This section is applicable to nonprofit corporations by virtue of Corporations Code, section 9002, which provides: "The provisions of the General Corporation Law, Division 1 of this title, apply to corporations formed under this part, except as to matters specifically otherwise provided for in this part."

The authority for commencing an action in the nature of quo warranto is found in Code of Civil Procedure, section 803, which provides: "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state. And the attorney-general must bring the action, whenever he has reason to believe that any such office or franchise has been usurped, intruded into, or unlawfully held or exercised by any person, or when he is directed to do so by the governor."

There is no statute authorizing a private citizen to bring an action in the nature of quo warranto. Consequently, in litigation between private parties the court may not inquire into the legal existence of a corporation which is acting under a charter which the Secretary of State has accepted for filing under the provisions of the General Corporation Law. (See *San Ysidro Irr. Dist.* v. *Superior Court,* 56 Cal.2d 708, 715 [16 Cal.Rptr. 609, 365 P.2d 753]; *Westlake Park Inv. Co.* v. *Jordan,* 198 Cal.609, 616 [246 P. 807]; *McCann* v. *Children's Home Society,* 176 Cal. 359, 363 [168 P. 355]; *Los Angeles Holiness Band* v. *Spires,* 126 Cal. 541, 544 [58 P. 1049]; *Stubbs* v. *Jones,* 121 Cal.App.2d 218, 222 [263 P.2d 100]; 16A Fletcher, Cyclopedia Corporations (perm. ed., 1962 rev.) §§ 8077, 8098; Ballantine & Sterling, Cal. Corporation Laws (4th ed.) §§ 40, 41.)

Plaintiffs' argument that the declaratory relief statute, Code of Civil Procedure, section 1060, authorizes the court to

declare the defect in the incorporation procedure has been answered by the opinion of the Supreme Court in the *San Ysidro* case thus: "The existing authorities in California support the view that declaratory relief would not be available to a party in these circumstances which could not maintain a quo warranto action in its own name." (56 Cal.2d at p. 715.)

Although it was not proper for the trial court either to sentence the corporation to death or to declare it had never lived, the court was not powerless to grant plaintiffs some effective relief. *Bomar* v. *Mount Olive M. B. Church,* 92 Cal. App. 618 [268 P. 665], points the way.

In the *Bomar* case a minority faction caused a corporation to be formed to take over the temporal affairs of an unincorporated religious association. By fraudulent misrepresentations they caused the property of the unincorporated group to be conveyed to the corporation. A judgment ordering reconveyance of the property to the trustees of the unincorporated association was affirmed on appeal. The appellate court said (at p. 626): "To regain possession of the property thus taken away from the unincorporated religious association is not an attack upon the corporation as a corporate entity, but only seeks to undo the wrong found by the court to have been perpetrated. Under such circumstances *quo warranto* proceedings instituted by permission of the attorney-general were and are wholly unnecessary. The plaintiffs have no interest in the existence of the corporation; they seek only the restoration of what the court has found to be their own."

In the present case there is no specific finding of fraud. The court did find, in substance, that the defendants purported to act for the association in causing the corporation to be formed and the property transferred although they had no actual authority to do so. If the acts of the defendants were not fraudulent, then they were the result of a mistake. In either event the corporation received the property not as the rightful owner, but as an involuntary trustee (Civ. Code, § 2224) and should be compelled to reconvey.

Defendants place some reliance upon the language found in *Security-First Nat. Bank* v. *Cooper,* 62 Cal.App.2d 653, 670 [145 P.2d 722], to the effect that when an unincorporated association is incorporated, the former is ipso facto dissolved and the property and members of the former become the property and members of the corporation. The *Cooper* case involved the liability of members of an incorporated fraternal lodge on a lease executed by a predecessor

unincorporated lodge. Nothing in that case relates to the rights of the members of an unincorporated association whose property has been taken by a corporation formed by a minority faction. The language used in the *Cooper* opinion should not be taken to mean that the type of equitable relief applied in the *Bomar* case is not appropriate where the incorporation was not authorized by the group which owned the property.

Defendants argue that it was improper for the court to order an election. Insofar as the balloting constituted a referendum on the issue of incorporation and an election of directors, the matter is moot because the voters did not favor the corporation. The only effect of the balloting then was to select seven trustees for the purpose of holding title to the association's property.

In view of the informality of the organization of the plaintiffs' church, the trial court had reason to conclude that it was desirable to identify a group of individuals, acceptable to the majority, to whom the property might be conveyed. The court-sponsored election was a practical device, not inconsistent with the customs and procedures which the members had adopted for themselves in the conduct of their affairs. Since the church membership at all times retains full control over its temporal affairs by majority vote at any business meeting (as the trial court has determined in its findings of fact), the association cannot suffer any lasting harm from the court's action in causing trustees to be elected to receive title to the property at this time.

Defendants' brief complains that the voting was limited to those who were members as of August 28, 1961. Defendants fail to point to any evidence in the record that other members entered the church after that date, and hence no prejudice appears. Moreover, if and when there is a change in the membership or in the sentiments of the members, there is no obstacle to a new election if the majority desires one.

Defendants' brief asserts that the court "failed to receive evidence with respect to irregularities occurring at the Court ordered election. ..." The record on appeal does not show that any such evidence was offered. There is nothing in the record to indicate that the election was not fairly conducted.

Defendants' brief also contains the unsupported assertion that "the court erred with respect to failing to receive evidence as to whether or not the persons whose names appeared upon the record designated as members were in fact still members and eligible to vote." The brief fails to point to

any evidence on this subject which was offered and not received. This subject therefore requires no further comment here. (See Cal. Rules of Court, rule 15 (a).)

Another contention of defendants is that the pretrial order limited the evidence to be received. The order contains this statement: "The court concludes that the basic issue presently before the court involves the control, management and disposition of tangible church property; that the quickest way to approach this basic issue is to make a preliminary determination of the original structure and makeup of this particular church in 1955 and any changes which have taken place since that time in the structure and makeup of the church. ..." The record does not indicate that anyone made any request for modification of this pretrial order, as is contemplated by rule 215 (b) or rule 216 of the California Rules of Court. As matters turned out, the evidence received on the subject indicated in the pretrial order was determinative of the case. Defendants' brief does not point to any evidence which was offered and rejected. The record of the trial does not indicate that defendants asked the court to enlarge the issues to be tried.

The defendants' brief suggests only one other issue which they now say should have been tried, namely, whether Reverend Charles Jackson was mishandling church funds. That is not a matter which has any bearing upon the issues litigated between the parties here. Charles Jackson is not a party to this action. The issue before the court was not whether he should have been dismissed as pastor, but whether the persons who purported to do so were empowered to act.

Since the judgment was drafted upon the assumption that all corporate acts were "null and void," it should be reversed to give the trial court an opportunity to prepare a new decree within the limitations indicated by this opinion. Modification of the judgment here by striking out certain portions would be impracticable. Other provisions may now be required to protect plaintiffs in lieu of the declaration annulling the corporate charter. The findings of fact may stand and there need be no new trial, though the trial court may, if it sees fit, take additional testimony to aid it in making a judgment appropriate to the existing conditions.

■ Since the purpose of the reversal is not to aid defendants but to enable the trial court to enter a proper decree against them, it seems inappropriate that they recover costs. This is a proper case for the exercise of the power of

the reviewing court, in the interests of justice, to deny any recovery of costs on appeal. (Cal. Rules of Court, rule 26(a).)

The judgment is reversed with directions to enter a new judgment consistent with the principles set forth in this opinion. Neither side shall recover costs on appeal.

Shinn, P. J., and Ford, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 1, 1964.