[Civ. No. 12245. Third Dist., Mar. 12, 1970.]

CAVIN MEMORIAL CORPORATION, Plaintiff and Appellant, v.
GEORGE W. REQUA et al., Defendants and Respondents.

[Civ. No. 12246. Third Dist., Mar. 12, 1970.]

FULTON-EL CAMINO RECREATION AND PARK DISTRICT,
Plaintiff and Respondent, v.
CAVIN MEMORIAL CORPORATION, Defendant and Appellant.

[Civ. No. 12247. Third Dist., Mar. 12, 1970.]

FULTON-EL CAMINO RECREATION AND PARK DISTRICT,
Plaintiff and Appellant, v.
LAWRENCE A. WINN et al., Defendants and Respondents;
CAVIN MEMORIAL CORPORATION, Defendant and Appellant.

[Civ. No. 12248. Third Dist., Mar. 12, 1970.]

BOHEMIAN VILLAGE TENNIS CLUB, INC., et al.,
Plaintiffs and Respondents, v.
CAVIN MEMORIAL CORPORATION, Defendant and Appellant.

(Consolidated appeals.)

COUNSEL

Hoseit & Wagaman, Max H. Hoseit, Skirving & Thompson and Carl M. Stein for Plaintiff and Appellant in No. 12245, for Defendant and Appellant in Nos. 12246, 12247, 12248, and for Defendants and Respondents in No. 12247.

Files & McMurchie, Files, McMurchie & Foley, and Donald W. McMurchie for Defendants and Respondents in No. 12245, for Plaintiffs and Respondents in Nos. 12246 and 12248, and for Plaintiff and Appellant in No. 12247.

OPINION

**BRAY, J.**\*—Cavin Memorial Corporation of Town & Country Village (hereinafter "Cavin Memorial") appeals from judgments in four superior court actions consolidated for trial. Fulton-El Camino Recreation and Park District, a political subdivision (hereinafter "District") appeals from the judgment in superior court action No. 171596 (3 Civil No. 12247).

The basic issue in all the actions is the ownership of the legal title to

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

certain real property in Del Paso Park View Tract No. 1 (hereinafter "Del Paso Tract") and in Bohemian Village Addition No. 1 (hereinafter "Bohemian Village") in Sacramento County, which, in turn, depends primarily upon the corporate existence of Bohemian Village Tennis Club, Inc. (hereinafter "Tennis Club") and the validity of its actions.

## THE ACTIONS

1. Superior court action No. 167987 (3 Civil No. 12246) Fulton-El Camino Recreation and Park District v. Cavin Memorial Corporation etc.; action to quiet title to a portion of Del Paso Tract; cross-complaint by Cavin Memorial to quiet title. Judgment was entered quieting the District's title and determining that Cavin Memorial had no interest in the property. Cavin Memorial appeals.

2. Superior court action No. 172011 (3 Civil No. 12248) Bohemian Village Tennis Club, Inc., George W. Requa, William B. Chase and Virginia L. Small v. Cavin Memorial Corporation, etc., Lawrence A. Winn, Oliver Q. Foust, Thomas C. Lynch, Attorney General of the State of California; action to quiet title to certain property in Del Paso Park View Tract No. 1, and to terminate all claims of others to certain real property it had conveyed to the District. The first count sought to set aside certain deeds executed by Jere Strizek and Jessie Dow Cavin; the second count was to set aside a 1962 judgment obtained by Cavin Memorial as plaintiff in a quiet title action; the third count was to set aside a deed to Cavin Memorial from Winn and Foust as purported officers of Tennis Club; and the fourth count was to establish a charitable trust in the real property and to cancel the Winn-Foust deed as being in violation of the trust. The trial court gave judgment quieting title in Tennis Club and its grantee, District. The judgment was silent as to the other relief sought by the complaint. Cavin Memorial appeals.

3. Superior court action No. 167870 (3 Civil No. 12245) Cavin Memorial Corporation etc. v. George W. Requa and Virginia L. Small; action for slander of title because of execution of a certain deed and to cancel that deed; judgment for defendants. Cavin Memorial appeals.

4. Superior court action No. 171596 (3 Civil No. 12247) Fulton-El Camino Recreation and Park District v. Winn, Foust and Cavin Memorial Corporation etc.; action for slander of title and conspiracy to slander title. The court gave judgment in favor of defendants. District appeals. Cavin Memorial also appeals. Inasmuch as Cavin Memorial is not an aggrieved party, its appeal must be dismissed.

## EVIDENCE

The common grantors of all the parties claiming title were C. M. Coffing and Grace Coffing, his wife, who on November 25, 1941, owned the subject real property. On that day they executed, and on December 2, 1941, recorded, a certain "Declaration of Restrictions," declaring among other restrictions not pertinent here, that Lots 148 and 149 of Del Paso Tract and Lot A of Bohemian Village were to be used and maintained for drainage and septic tank absorption fields and for recreation purposes for the benefit of the owners and their successors in interest of land situated in Bohemian Village. All conveyances of lots in said tract were to be subject to said restrictions.

August 1, 1941, Tennis Club was incorporated as a nonprofit social and recreational association. By deeds dated September 18, 1945, and August 3, 1949, the Coffings conveyed to Tennis Club the above described property. On August 22, 1962, Cavin Memorial obtained a superior court judgment quieting its title to the property against certain persons. Although Tennis Club was purportedly joined as a defendant in the action, it was not served personally with process nor did it appear in the action.

On December 10, 1963, Jessie Dow Cavin (who had resigned as director on December 26, 1957) as "President" of the Tennis Club executed a deed to herself of Tennis Club's property less the westerly 100 feet thereof. This deed was not recorded. On June 10, 1964, the Coffings (although in 1945 and also in 1949 they had executed deeds to Tennis Club) executed a grant deed of the property, less Lot A, to Cavin Memorial. This deed was recorded October 15, 1965. On March 21, 1966, Tennis Club purported to execute a grant deed conveying the property, less the westerly 100 feet, to Cavin Memorial. On April 1, 1966, Tennis Club purported to execute a deed of the property, less Lot A, to District.

It will be noted that the Coffings, the original owners of the property, executed two deeds, which together totaled all the property, to Tennis Club; that there were three deeds purporting to be conveyances out of Tennis Club. (1. Deed of Jessie Dow Cavin as "President"; 2. Deed purporting to be executed by Tennis Club to Cavin Memorial; and 3. Deed of Tennis Club to District.) These deeds will be hereinafter discussed.

## DID TENNIS CLUB GET TITLE?

It is claimed that Tennis Club never became a corporation, either de jure or de facto, and hence had no power to accept title to real property or to convey it, and that when certain deeds were made it had been suspended for nonpayment of taxes and hence could not then execute a deed. Therefore, it is necessary to consider the history of Tennis Club and its actions.

On August 1, 1941, articles of incorporation of Tennis Club were filed with the Secretary of State. They provided for two classes of members: (1) three general members who were required to be residents of Bohemian Village subdivision and entitled to one vote each in the affairs of the corporation, and (2) "participating members"—all bona fide residents of the subdivision but not entitled to vote. The articles named as directors and general members Jere Strizek, Jessie Dow Strizek and Richard Seely. (Richard Seely died on March 18, 1950.) It is claimed that no bylaws or amendments to the articles were ever adopted, although Oliver Foust testified that there were bylaws and minutes which were destroyed. The purpose of the corporation, according to the articles, was to establish a nonprofit social and recreational association to provide social and recreational activities for the residents, owners and tenants of the property in the subdivision known as Bohemian Village.

As stated, on September 18, 1945, two deeds from the Coffings of the property were executed to Tennis Club. The first question to be determined is whether Tennis Club acquired title by the deeds of the Coffings because at that time no action other than the filing of its articles of incorporation had been taken by it.[1]

Civil Code, section 597 (now Corp. Code, §§ 308 and 9501), dealing with the formation of *nonprofit corporations,* as it existed in 1941 when Tennis Club's articles of incorporation were filed provided in pertinent part: "Upon the filing of the articles by the secretary of state the corporation shall be created and shall continue to exist perpetually, unless otherwise provided by law, and shall possess the following powers: . . . to . . . acquire and hold all property, real or personal. . . ."

Section 292 of the Civil Code, then existing (now Corp. Code, § 308) dealing with the formation of general corporations, provided in part: "The corporate existence shall begin upon the filing of the articles and shall continue perpetually, unless otherwise expressly provided by law."

Section 370, as it then existed (now Corp. Code, § 312) provided: "In any action at law, other than one in the nature of quo warranto, the original articles or certificate of incorporation, or a copy of either thereof, duly certified by the Secretary of State, shall be conclusive evidence of its formation and prima facie evidence of its corporate existence."

Sections 292 and 370 were applicable to nonprofit corporations by

---

[1]The Coffings on August 3, 1949, executed another deed, less the westerly 100 feet, to Tennis Club. If the 1945 deed conveyed title, this second deed was of no value. If it conveyed no title because the Tennis Club had not acted except to file its articles of incorporation, this deed carried no title either, as no other action had been taken by the corporation.

reason of the then section 605d (now Corp. Code, § 9002) which provided that the provisions of the general corporations law applied to nonprofit corporations except as to matters specifically otherwise provided for.

■ "[I]n litigation between private parties the court may not inquire into the legal existence of a corporation which is acting under a charter which the Secretary of State has accepted for filing under the provisions of the General Corporation Law." (*Barber* v. *Irving* (1964) 226 Cal.App.2d 560, 565 [38 Cal.Rptr. 142]; see 3 Witkin, Summary of Cal. Law (1960) § 11, p. 2311; Balantine & Sterling (4th ed.) §§ 41, 42, pp. 86-88.) Although *Barber* dealt with the later sections of the Corporations Code, it is still applicable as the Corporations Code sections are, as hereinbefore stated, the codification of the Civil Code sections hereinbefore mentioned.
■ As the corporation was in existence it follows that a conveyance to it carried title. (See former Civ. Code, § 597.)

Tennis Club having acquired title, the next question is whether it divested itself of that title. Cavin Memorial's first contention in that respect is that Tennis Club was the *alter ego* of two of the incorporators, Jere and Jessie Strizek, and hence they had the right to treat the property as their own.[2]

■ Tennis Club was not the *alter ego* of the Strizek's, nor were they, as they claim, the only persons interested in that corporation. It was expressly formed for the benefit of the owners, tenants and residents of Bohemian Village.

Although the articles of incorporation provided that participating membership in Tennis Club was to be "upon the terms and conditions prescribed in the by-laws" and no bylaws were adopted, nevertheless, the corporation was formed for the benefit of the residents and the owners and tenants of property in Bohemian Village. Moreover, the Coffings' "Declaration of Restrictions" made the property conveyed to Tennis Club subject to their benefit. Although the terms of membership in the corporation had not been prescribed, it is clear that under the articles of incorporation the three incorporators were entitled to no more interest in the property than the participating members to be.

■ Likewise, although the three directors were the only ones who could vote as members in the affairs of the corporation, they had no more interest in it than the other members. The deeds to the corporation were subject to

---

[2]Interestingly enough, they completely disregarded the third director and general member by saying that he was the Strizeks' auditor and had no interest in the property.

the restrictions which applied to the benefit of all the owners in the village and its Addition No. 1.

■ The next step in the history of the property resulted from the fact that the Strizeks erroneously claimed to be the actual owners of the property. In January 1955 a property settlement agreement was entered into between Jere and Jessie Strizek. This agreement provided in part that neither party would be entitled to continue in the employ of any corporation as to which he or she ceased to be a stockholder, and would, on request of the other, forthwith resign as an officer and/or director thereof. Jere then executed a deed of the property to Jessie on February 5, 1955. As Jere had no title to the property, this deed carried no title. The only interest of both Jere and Jessie in the property was the right to insist that it be used for the purpose stated in the Coffings' "Declaration of Restrictions," and for the purposes of the nonprofit corporation. This right was limited to owners of property in Bohemian Village and its Addition No. 1. It could not be conveyed.

■ Thereafter, Jessie Dow Strizek married Robert Cavin. On January 25, 1955, Tennis Club was suspended for nonpayment of taxes. It was not reinstated until June 17, 1964. On December 11, 1957, Cavin Memorial was formed. On December 26, 1957, Jessie Cavin executed a quitclaim deed of the property to Cavin Memorial. The same day Jessie Cavin, Robert Cavin and Oliver Foust, purporting to act as directors of Tennis Club, executed a deed to Cavin Memorial. Jessie Cavin resigned as director and made an assignment to Cavin Memorial of her membership in Tennis Club. As she had no title her deed to Cavin Memorial carried no title. At the time of the execution of the deeds, Jere Strizek was still a director of Tennis Club. There was, thus, only one vacancy on the board (Seely had died). One director without the consent of the other director could not appoint a director (former Civ. Code, § 307) so her appointment of the two new directors was void (if she made any such appointment).

Cavin Memorial contends that the purported transfer by Jere Strizek to Jessie Strizek of his interest in Tennis Club constituted a proxy to act for him in any votes of the corporation. As we have stated, this transfer carried no interest in either the property or the corporation itself as Jere had no transferable interest, nor could it be construed as an appointment to her to act as his proxy. Former Civil Code section 602 (now Corp. Code, § 9609) provided: "No member may transfer his membership *or any right arising therefrom,* unless it is so provided in the articles or by-laws." (Italics added.) There was no provision to the contrary. The only valid act that Jessie performed that day was to resign as a director.

The members and residents of Bohemian Village had formed the Town

and Country Improvement Association (hereinafter "Improvement Association") to provide swimming facilities and a club.

In April 1950 Tennis Club, by written document, leased to Improvement Association a portion of Lots 148 and 149. The lessee agreed to build a swimming pool and operate it for use solely of members of Improvement Association. The pool was built and the Improvement Association operated it as a private swimming club for its members.

On January 10, 1958, a lease was entered into between Cavin Memorial and the Improvement Association, leasing a portion of the property for use as a swimming pool to the latter. On January 23, 1958, a letter was sent by the Improvement Association to all homeowners in Bohemian Village. A meeting of the members of Improvement Association was held on February 13, 1958, at which it is claimed approximately 100 members were present. They were told that if they would sign a quitclaim deed to Cavin Memorial clearing title to the property, Improvement Association would acquire two acres for a new swimming pool.

A number of quitclaim deeds and disclaimers were obtained from lot owners in Bohemian Village Addition No. 1. Cavin Memorial then filed a quiet title action.

■ Notwithstanding Jessie's resignation as a director of Tennis Club on December 26, 1957, she, on December 10, 1963, purporting to act as president of Tennis Club, executed a deed of the property to herself. This deed was not recorded. Obviously, this deed carried no title. Taking the position that Tennis Club had been dissolved, Jessie Cavin executed an assignment of her alleged interest in the Tennis Club to Cavin Memorial. On March 21, 1966, Lawrence A. Winn, purporting to act as president, and Oliver Q. Foust, purporting to act as secretary, executed on behalf of Tennis Club a deed to Cavin Memorial. This assignment carried no interest as Jessie had no assignable interest. (Former Civ. Code, § 307.) The deed carried no interest as neither Winn nor Foust were directors nor officers of the corporation.

On October 15, 1965, a deed of the property, excepting Lot A, to Cavin Memorial, executed by the Coffings on June 10, 1964, was recorded. As the title was still in Tennis Club, this deed carried no title.

On February 23, 1961, Cavin Memorial filed in Sacramento County Superior Court a quiet title action against some 280 named persons, Bohemian Tennis Club, a nonprofit corporation, and Does I through CCC, and all unknown persons claiming any interest in the property here involved, excepting the westerly 100 feet. According to the affidavit for publication of summons, all defendants had been served, or had signed

disclaimers or quitclaim deeds except approximately 60 named in an attached list.[3]

As to approximately 60 defendants concerning whom an order for publication of summons is asked, no statement concerning their residences nor efforts to find them is made, except the bald conclusion that they "cannot be located to serve with process."

■ To obtain jurisdiction of a defendant by publication it is elementary that the affidavit for order of publication must comply with the provisions of section 412 of the Code of Civil Procedure. "Affidavits devoid of averments of facts showing that due diligence was exercised to make service have consistently been held to be insufficient, and orders for service by publication based . . . [upon such affidavits] have uniformly been held to have been beyond jurisdiction and void." (*Batte* v. *Bandy* (1958) 165 Cal.App.2d 527, 534 [332 P.2d 439].) ■ Default judgments based upon such defective service are void. (*Morgan* v. *Clapp* (1929) 207 Cal. 221, 224 [227 P. 490].)

■ As stated above, no attempt was made in the affidavit to show an effort to serve either the personally named defendants or the corporation in which the fee title to the property involved rested, namely, Bohemian Village Tennis Club, Inc., which is named in the published summons as "Bohemian Tennis Club," the name under which it acquired title from the Coffings in 1945. In fact, no mention of Tennis Club appears in the affidavit. Nor was any statement made as to why that corporation could not be and was not served.

Thus, so far as the approximately 60 listed persons and Tennis Club were concerned, no jurisdiction of them was obtained in the quiet title suit, and the judgment entered against them on August 22, 1962, is void on its face. So far as that action is concerned, Tennis Club still retained its fee title subject only to the Coffings' "Declaration of Restrictions."

■ Cavin Memorial gained no fee title to Lot A of Bohemian Village Addition No. 1 and Lots 148 and 149 of Del Paso Tract by the disclaimers, quitclaim deeds and judgment in the quiet title action for two reasons: (1) that title remained in Tennis Club, and (2) the grantors, disclaimants and the defendants in the quiet title action had no fee title in said lots to grant or to be taken from them. As stated above, the personally named defendants are referred to in the affidavit for publication as *residents* of Bohemian Village Addition No. 1 and Del Paso Park View Tract No. 1. How many of them are lot owners does not appear. ■ The Coffings'

---

[3]The defendants are described as residents in "Bohemian Village Addition No. 1," "Del Paso Park View Tract No. 1."

declaration is to the effect that Lot A and Lots 148 and 149 are to be used for drainage, septic and recreation purposes by lot owners in Bohemian Village and its Addition No. 1. The deed from Coffings to Tennis Club, although containing no restrictions or conditions, was necessarily subject to those stated in the Coffing declaration. Tennis Club's articles of incorporation provide that its purpose was to provide social and recreational activities for the residents, owners and tenants of property in Bohemian Village.

Thus, the only interests either residents, owners or tenants had in the Tennis Club lots was that they be maintained for recreational purposes. (See fn. 1, *supra*.) It is not clear just what Cavin Memorial received by the deeds to it, the disclaimers and the judgment other than, perhaps, its right to the use of Tennis Club lots for recreational purposes. But it is clear that Cavin Memorial obtained no fee title to these lots.

This, then brings us to the situation on April 4, 1966, when a deed was executed by Tennis Club to the District (not including Lot A). A rather interesting contretemps exists concerning the deed from Tennis Club to District. It is dated April 1, 1966, and notarized on the same date. The evidence clearly shows that the meeting of Tennis Club's board of directors at which the resolution for deeding the property (less Lot A) was adopted, the escrow instructions placing the deed with the title company and the signing of the deed by Tennis Club officers all took place, on April 4. Mrs. Small testified that the date on the deed was in error. The deed was recorded April 7. The erroneous date on the deed and on the notary's certificate is of no significance. As shown, title to the property was still in Tennis Club. Of the original three directors of that corporation, Seely had died, Jessie Strizek Cavin had resigned and had also died, leaving Jere Strizek as the sole surviving director. He did not lose either his directorship or membership on leaving California, as there was no provision for such result. At a board meeting on April 4, 1966, Jere appointed George W. Requa and William B. Chase to fill the vacancies. Jere then resigned as a director, and Virginia L. Small was appointed by the other two directors to succeed him. The directors elected Requa president, Chase vice president and Mrs. Small secretary-treasurer. The board received an offer from District for the purchase of the property for $12,500, a figure which included the assumption of delinquent taxes. The board's feelings about the matter were expressed in a resolution to sell, which stated in part, that Tennis Club was a nonprofit corporation and did not contemplate pecuniary profit or gain to its members; that it was formed to provide social and recreational activities for the residents, owners and tenants of property in Bohemian Village tract; that the Coffings had declared that the property be used for such purposes; that the corporation had no funds and had never been able

to develop the property; that the property was located within the boundaries of the District, which had the funds and had agreed to develop the property as a park; that the property was subject to sale for nonpayment of taxes in the sum of $8,348.41; that litigation might be required due to claims of Cavin Memorial, and that the best interests of Tennis Club and its members would be served by transferring the property to the District. As the sole surviving general member of Tennis Club, Jere Strizek approved the sale.

■ Section 9502 of the Corporations Code provides for the filling of vacancies on the board of directors of a corporation due to death, resignation or disability "by a majority of the remaining members thereof, though less than a quorum," unless otherwise provided in the articles or bylaws. Tennis Club's articles were silent on that subject, and no bylaws are available. There can be no question but that Jere Strizek, as sole remaining member of the board, had the power to fill the vacancies. It appears further that the new board, in carrying out the objects for which Tennis Club was formed and which that corporation was in no condition to carry out, was acting in the best interests of Tennis Club and its members in selling the property to the District.

In its quiet title aspects, this is an action in equity. In weighing the relative merits of the claims of Cavin Memorial and the District, it is clear that the equities are on the side of the public entity which has paid money for the property and which is in a position to develop it for purposes intended by the Coffings. Cavin Memorial, the private corporation (although a nonprofit one) paid nothing for the property; by an ingenious scheme, promising to convey to Improvement Association (a membership club) not Tennis Club a small plot upon which it would build a $15,000 swimming pool, it has attempted to get title to property appraised at $180,000.

Cavin Memorial cites section 4600 of the Corporations Code which requires approval of 50 percent of the voting members to dissolve a corporation. ■ The sale to the District was not a dissolution of Tennis Club. It still should have assets, namely, the moneys received or due from the District, which moneys will have to be used for the purposes for which Tennis Club was formed. There is evidence that Tennis Club has $2,008.34 in a bank account in the Wells Fargo Bank and still owns Lot A.

■ It appears that Jere Strizek was paid $2,000 for calling the board meeting of April 4. This fact would not invalidate the calling of the meeting, the proceedings thereat, or the appointment of the new board. If there were anything wrong in his acceptance of the $2,000, it would be a matter between him and the corporation and not a matter of concern to Cavin Memorial.

Cavin Memorial contends that the District is barred from asserting title by the provisions of section 318 of the Code of Civil Procedure, which requires seisin or possession within five years of the commencement of the action. As shown, Tennis Club was the legal owner of the property. Section 321 of the Code of Civil Procedure provides that "the person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, unless it appears that the property has been held and possessed adversely to such legal title, for five years before the commencemnt of the action."

The evidence discloses that Cavin Memorial did not comply with the requirements of sections 318 or 325 of the Code of Civil Procedure for establishing title by adverse possession. Cavin Memorial contends that Mr. Strizek executed a quitclaim deed to Mrs. Strizek and should thus be estopped from later claiming a title and interest to the said property. While originally both Mr. and Mrs. Strizek[4] seemed to claim that the property of Tennis Club was their individual property, at the time of conveyance from Tennis Club to District Mr. Strizek no longer made such claim. His actions show that he claimed the title to the property to be in Tennis Club.

 It is true that many of the owners of property in Bohemian Village signed disclaimers to Cavin Memorial and did not contest the quiet title action brought by the latter. However, those actions could not bind Tennis Club. Moreover, Cavin Memorial never had title.

 The fact that District negotiated with Cavin Memorial for the purchase of the property at a time when District believed that Cavin Memorial owned it could not possibly estop District from dealing with Tennis Club when it discovered that Cavin Memorial did not have title.

### SLANDER OF TITLE APPEAL NO. 12247

District sued Winn, Foust and Cavin Memorial for slander of title. On March 21, 1966, a deed of the property was signed by Lawrence A. Winn, as president, and Oliver Foust, as secretary, of Tennis Club, to Cavin Memorial. Foust, who was then and now is secretary of Cavin Memorial, testified there never was a meeting of the board of directors of Tennis Club appointing him either a director or secretary of that corporation. He based his claim of a right to act as such for Tennis Club on the assignment to Cavin Memorial by Jessie Cavin of her interest in Tennis Club. Obviously, if this assignment carried any interest in Tennis Club or its property (which it did

---

[4] It is rather interesting to note that Mrs. Strizek, when she took the position that she personally owned Tennis Club property and purported to convey it to Cavin Memorial, took an income tax deduction of $47,000.

not) it would not entitle Mr. Foust to appoint himself a director or secretary thereof.[5]

Dr. Winn was and is president of Cavin Memorial. He testified that there never was a meeting of the board of directors appointing him either a director or president of Tennis Club, and he never attended a meeting of the board of directors thereof. Both Foust and Winn testified that they signed the deed in the interests of Cavin Memorial in order to clear its title to the property. Obviously, the deed is void and carried no title and was properly ordered cancelled by the court.

 Slander of title is the false and unprivileged disparagement of title to real property resulting in pecuniary damage. (*Gudger* v. *Manton* (1943) 21 Cal.2d 537, 542 [134 P.2d 217].) The recording of a deed which casts doubt upon the title is basis for an action in slander of title. (*Gudger* v. *Manton, supra,* p. 543.) The trial court found that in executing the deed Winn and Foust falsely represented themselves to be officers of Tennis Club and authorized to execute said deed. However, the court found that in doing so they did not act maliciously, and therefore that plaintiff was not entitled to damages. The record clearly shows that Winn, Foust and Cavin Memorial were acting under advice of counsel and believed that the execution of the deed was proper.

The judgment denying District recovery in the slander action was proper. As Cavin Memorial is not aggrieved by that judgment, its appeal therefrom must be dismissed.

In superior court action No. 167987 (3 Civil No. 12246) Fulton-El Camino Recreation & Park Dist. v. Cavin Memorial, the court found that Requa, Chase and Small were properly appointed and elected as directors of Tennis Club and that the deed of Tennis Club to District recorded April 7, 1966, was properly executed pursuant to a duly adopted resolution of its board of directors; that the property settlement agreement between Jere and Jessie Strizek and Jere's deed to Jessie did not convey title; that Jessie's deed to Cavin Memorial did not convey any interest in the property as she had no interest therein; that the unrecorded deed of Tennis Club to Jessie did not convey any interest in the property because she was never authorized by the board of directors to execute said deed; that she was not an officer or director of Tennis Club at that time; that the purported meeting of the board of directors in December 1957, at which only Jessie was present, was not effective for any purpose and did not affect the title to the property as no

---

[5]It is interesting to note that on December 23, 1957, Jessie Cavin, Mr. Cavin and Mr. Foust met for the purpose of dissolving Tennis Club. The minutes of that meeting showed that Richard Seely, who was then dead, was present. No purported dissolution took place.

quorum was present; that the decree quieting title in action No. 129122 is ineffective and should be vacated for lack of jurisdiction because there is no evidence of any service on Tennis Club, its officers or directors; that Tennis Club did not appear therein, and the judgment there had no effect on the title to the property; that there is a meritorious defense to said action as Cavin Memorial was not in possession and paying taxes on the property for a period of 10 years prior to the filing of the complaint, and that the decree quieting title is of no effect; that the deed signed by Winn as president and Foust as secretary, who were not such officers, was wholly ineffective as there was no meeting of the Tennis Club's board of directors authorizing the execution of such deed; that the deed from the Coffings to Cavin Memorial dated June 10, 1964, conveyed no interest as the Coffings had no interest in the property at that time; that this action is not barred by the provisions of Code of Civil Procedure, section 318 because Tennis Club and District were the legal owners of the property and established legal title thereto, and that Cavin Memorial had not held or possessed said property adversely to such legal title for five years before the commencement of the action; that District, its officers and directors, and the residents of the District are not estopped from claiming interests in the property by virtue of any participation in or consent to the decree in the quiet title action or of any agreement between Cavin Memorial and District or its officers, or with the residents of Bohemian Village Subdivision through Town and Country Improvement Association and that Cavin Memorial has no right, title or interest in the property. Such findings are supported by the evidence. The court correctly quieted title in the District.

In superior court action No. 172011 (3 Civil No. 12248) findings were made similar to those in superior court action No. 167987, and it was concluded that Tennis Club is the owner of Lot A and District the owner of the rest of the property, and that Cavin Memorial has no interest in either and the titles of Tennis Club and District should be quieted. Such findings are supported by the evidence, and the court properly quieted title in Tennis Club, and its grantee.

In superior court action No. 167870 (3 Civil No. 12245) the court found that the deed of April 7, 1966, from Tennis Club to District, was executed at the time Tennis Club was the owner of the property; that Requa and Small, who signed it as president and secretary, respectively, were such officers and that the deed was executed in good faith assertion of title by Tennis Club; that the property was not made subject to a charitable trust by virtue of any conveyance to Tennis Club; that Cavin Memorial is not the owner of the property and that there was no slander of title by the defendants.

The court properly refused to set aside the deed executed on April 4,

1966, by Requa and Small, as president and secretary-treasurer, respectively, of Tennis Club and properly held that Cavin Memorial may not recover damages from said persons for slander of title for the reason that Cavin Memorial has no title to the property as we have shown. It appears that Cavin Memorial was formed for the purpose of building a hospital. That purpose has been abandoned, and it is now claimed that its purpose is to sell the Tennis Club property and to grant the proceeds to a parochial school, the Sacramento Union Academy, owned and operated by the Seventh Day Adventist Church.

Cavin Memorial's appeal in superior court action No. 171596 (3 Civil No. 12247) is dismissed.

The judgments in all actions are affirmed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied April 6, 1970, and the petition of appellant Cavin Memorial Corp. for a hearing by the Supreme Court was denied May 6, 1970.