JACK T. JAMAR AND NORMA JAMAR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jamar v. Commissioner
Docket No. 18783-89
United States Tax Court
T.C. Memo 1991-602; 1991 Tax Ct. Memo LEXIS 649; 62 T.C.M. (CCH) 1390; T.C.M. (RIA) 91602; December 5, 1991, Filed *649 Decision will be entered under Rule 155. Kevin G. Staker, Philip G. Panitz, Steven L. Staker, and Gregory R. Gose, for the petitioners. Gordon L. Gidlund, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' Federal income tax for taxable years 1982, 1983, and 1984. The parties have reached agreement with respect to several of the issues which will be given effect in the Rule 155 [1] computation. After concessions by both parties, the remaining issues before the Court are: (1) Whether the loss reported on petitioners' 1983 Form 1040, Schedule C was properly deductible by petitioner's sole proprietorship and not petitioner's wholly owned corporation. We hold that the loss was not properly deductible by the sole *650 proprietorship. (2) Whether petitioners are liable for additions to tax under section 6653(a)(1) and 6653(a)(2) for 1982 and 1983. We hold that petitioners are liable for such additions to tax. (3) Whether petitioners are liable for additions to tax under section 6661 for 1982 and 1983. We hold that petitioners are liable for such additions to tax if, after considering this Court's findings and opinion, the numerical thresholds of section 6661 are satisfied. (4) Whether petitioners are liable for an addition to tax under section 6651(a)(1) for failing to file a timely return in 1982. We hold that petitioners are liable for an addition to tax for failing to file a timely return in 1982. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Ventura, California, at the time of filing their petition herein. From 1963 through February 1982, Jack T. Jamar (hereinafter petitioner) was the president and sole shareholder of a California corporation named JNJ Sales and Service, Inc. JNJ Sales and Service, Inc., operated an oil field waste disposal *651 site. In February of 1982, the waste disposal site operated by JNJ Sales and Service, Inc., was legally closed. After closing the waste disposal business, petitioner decided to enter the waste hauling business. On December 8, 1982, petitioner submitted an application for a permit to haul hazardous substances. The permit was not granted by State authorities until February 11, 1983. During December 1982, petitioner did not enter into any waste hauling contracts and did not perform any waste hauling services. In December, petitioner did enter into contracts to purchase the trailers and tanks necessary to operate his waste hauling business. The equipment ordered by petitioner was supposed to be delivered in January but was not completely delivered until March or April 1983. In the interim, petitioner purchased hoses and other components to begin fitting the various parts together to prepare the equipment to be placed in service when the trailers finally arrived. In late January 1983, at petitioner's request, attorney Thomas Olson reserved a corporate name for the waste hauling business. On February 11, 1983, petitioner received his permit to haul hazardous waste. On February *652 14, 1983, JNJ Oilfield Services, Inc. (hereinafter Oilfield, Inc.), was incorporated. Oilfield, Inc., a California corporation, was in the business of hauling oil field waste. Petitioner was president and sole shareholder of the corporation. Petitioner preferred the corporate form due to his concern about the dangers of drug use among his drivers while hauling hazardous substances. Petitioner adopted the corporate form because of its limited liability characteristic. Thomas Olson conducted the first meeting of the board of directors and shareholders on May 31, 1983. At the May 31 meeting it was decided that the assets of the sole proprietorship would be transferred, at least in form, to Oilfield, Inc., on July 1, 1983. The primary reason for selecting July 1, 1983, to formally transfer the assets to Oilfield, Inc., was the administrative convenience of simplifying preparation of the accounting records. Ron Purdy, a certified public accountant, was the authorized representative of petitioners for the years in issue. Purdy prepared petitioners' tax returns for taxable years 1982 and 1983. He also prepared the financial statements for the waste hauling business, including the *653 interim closing of the books as of June 30, 1983, the date petitioners contend was the last business day of the sole proprietorship. For the taxable period beginning January 1, 1983, and ending June 30, 1983, Purdy prepared and petitioners filed a Form 1040, Schedule C. For the period beginning July 1, 1983, and ending December 31, 1983, Purdy prepared and petitioners filed a corporate income tax return, Form 1120, for Oilfield, Inc. The Form 1040, Schedule C reported a $ 177,761 loss for the first 6 months of the waste hauling operations in 1983. The Form 1120 reported a $ 67,021 loss from waste hauling business activities during the second half of 1983. Purdy was not aware that petitioners had filed articles of incorporation for the waste hauling business until he received a State tax return from the California State taxing authority indicating that the date of incorporation was February 14, 1983. On May 31, 1988, Internal Revenue Service examiner Terry Allen filed a revenue agent's report which concluded that petitioners' taxable income for 1983 should have been $ 384,962 instead of the $ 123,336 loss that petitioners actually reported. The examiner increased dividend income *654 by $ 202,300, disallowed a Schedule C net loss of $ 177,761, and reduced petitioners' medical expense deduction by $ 4,901. On December 13, 1990, the parties filed a Stipulation of Settled Issues. For taxable year 1983, respondent conceded the $ 202,300 adjustment to dividend income, and both parties agreed that the medical expense deduction would be recalculated in a Rule 155 determination which is dependent on the findings and opinion in this case. Thus, the only issue that remained in dispute for 1983 was the disallowance of the $ 177,761 net loss on Schedule C. In respondent's deficiency notice, he determined a deficiency in and additions to tax for taxable year 1982. The parties later entered into a settlement with respect to the tax liability for 1982. The parties did not stipulate to a settlement of the 1982 additions to tax under sections 6653(a)(1), 6653(a)(2), 6651(a)(1), and 6661. Petitioners' 1982 tax return was received by the Internal Revenue Service Center in Fresno, California, on November 17, 1983. Petitioner filed for an extension of time to file the 1982 tax return which reset the due date at August 15, 1983. Respondent's deficiency notice did not allege *655 an addition to tax under section 6651(a)(1) for failing to timely file petitioners' return for taxable year 1982. Approximately 3-1/2 months before trial, respondent moved to amend his answer to include the section 6651 addition to tax. This Court granted the motion for leave to amend respondent's answer. At trial, respondent presented a Certificate of Assessments and Payments which stated that the 1982 return was received on November 17, 1983. The certificate indicated that an extension for time to file was granted through August 15, 1983. The certificate contained no entry indicating that a subsequent extension was filed. Petitioners' 1982 tax return was stamped by the Internal Revenue Service as received on November 17, 1983. Petitioners did not present a copy of an extension of time to file for any date after August 15, 1983. OPINION At trial and in brief, petitioners argued that respondent failed to timely invoke section 482 as a means of reallocating income. Petitioners cite Procacci v. Commissioner, 94 T.C. 397 (1990), and the cases discussed therein, to support their position. In Procacci, respondent invoked section 482 a month prior to trial *656 in order to reallocate income between separate entities. This Court explained the burden of proof requirement and stated: Because of the heavy burden on the taxpayer in the usual sec. 482 case, the burden of proof may become important. We have taken a three-tiered approach to burden of proof. If the notice of deficiency raises the sec. 482 issue, the taxpayer has the burden to prove that respondent abused his discretion, i.e., that respondent's allocation was "unreasonable, arbitrary, or capricious." Achiro v. Commissioner, 77 T.C. 881, 891 (1981); Boyer v. Commissioner, 58 T.C. 316, 327 (1972); Ach v. Commissioner, 42 T.C. 114, 126 (1964), affd. 358 F.2d 342 (6th Cir. 1966), cert. denied 385 U.S. 899 (1966). If respondent does not indicate in the notice that he relies on sec. 482, but so informs the taxpayer by pleadings far enough in advance of trial to avoid prejudice to the taxpayer, the burden is on respondent to establish all elements necessary to support this "new matter." Rule 142(a). Finally, if respondent raises sec. 482 so late as to violate principles of fair play and *657 justice, the Court will refuse to consider the sec. 482 issue at all. Achiro v. Commissioner, supra at 891 and cases cited there. [Procacci v. Commissioner, supra at 412 n.7.]
Based on the three-tiered test discussed in Procacci, petitioners contend that respondent is precluded from relying on section 482 since respondent did not apprise petitioners of his intention to invoke section 482 until 22 days before the trial. In the alternative, petitioners assert that raising the section 482 issue in a trial memorandum 22 days before trial constitutes a "new matter" under Rule 142(a) and therefore respondent bears the burden of proof. Because we resolve this case on other grounds it is unnecessary for us to decide whether respondent's less than timely raising of the section 482 issue placed the burden of proof on respondent or precluded him from relying on section 482 altogether. [2]
*658 The first issue for consideration is whether the loss reported on petitioners' 1983 Form 1040, Schedule C was properly deductible by petitioner's sole proprietorship instead of Oilfield, Inc. The resolution of this issue depends on what date Oilfield, Inc., commenced its existence as a taxable entity. Petitioners maintain that Oilfield, Inc., did not become a taxable entity until July 1, 1983, when the assets of the waste hauling business were formally transferred to the corporation. Respondent contends that the waste hauling business was converted to a corporate taxable entity on February 14, 1983, the date Oilfield, Inc., was incorporated. Although local law does not control the classification of an organization for Federal tax purposes, it does govern the determination of whether the legal relationships that have been established on formation of the organization are such that the Federal standards are met. Sec. 301.7701-1(c), Proced. & Admin. Regs. Accordingly, we will examine the status of the waste hauling business under local law. Petitioners argue that Oilfield, Inc., could not possibly have been a viable corporate entity on February 14, 1983, because the first meeting *659 of the directors and shareholders did not occur until May 31, 1983, where it was decided that the assets of the waste hauling business would formally be transferred to the corporation on July 1, 1983. The law of California states otherwise. Corporate existence begins upon the filing of the articles of incorporation and continues perpetually unless otherwise provided by law. Cal. Corp. Code sec. 200(c) (West 1977). A copy of the articles of incorporation duly certified by the secretary of state is conclusive evidence of the formation of the corporation and prima facie evidence of its corporate existence. Cal. Corp. Code sec. 209 (West 1977). In Cavin Memorial Corp. v. Requa, 5 Cal. App. 3d 345, 85 Cal. Rptr. 107, 110-111 (1970), the California Court of Appeal noted that it could not inquire into the legal existence of a corporation that acted under its articles of incorporation which the secretary of state had accepted for filing. The court concluded that the corporation could acquire title to property even though no action other than filing its articles of incorporation had taken place prior to the date of the disputed conveyance. In the instant *660 case, petitioner's attorney reserved a corporate name in January 1983. On February 11, 1983, petitioner received his permit to haul hazardous waste. On February 14, 1983, Oilfield, Inc., was incorporated. Petitioners' State tax return acknowledged that the business commenced as a corporate entity on February 14, 1983. Under California law, Oilfield, Inc., began its existence on February 14, 1983. We therefore hold that as of February 14, 1983, the waste hauling business, Oilfield, Inc., became a corporate entity for Federal tax purposes. In cases of this sort, the rule is that corporate entities generally will be recognized rather than disregarded for Federal tax purposes and only in exceptional situations will courts ignore the separate existence of a corporation. Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 439, 87 L. Ed. 1499, 63 S. Ct. 1132 (1943); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 442, 78 L. Ed. 1348, 54 S. Ct. 788 (1934); Evans v. Commissioner, T.C. Memo 1974-267. Where a corporation engages in business activity subsequent to its incorporation, its status as a corporate entity will not be disregarded for tax purposes. National Investors Corp. v. Hoey, 144 F.2d 466 (2d Cir. 1944). *661 If the conditions precedent to the creation of a corporate body have been complied with under State law, the corporate entity will not be disregarded even though no stockholders' or directors' meetings were held, no officers or directors were elected, no minutes were kept, and no stock was issued. Skarda v. Commissioner, 27 T.C. 137, 144-145 (1956), affd. 250 F.2d 429 (10th Cir. 1957); Evans v. Commissioner, supra.
In O'Neill v. Commissioner, T.C. Memo 1957-193, the taxpayers claimed that their timber business was never really a corporate entity subject to taxation because the entity had no paid-in capital; there were never any directors, officers, or stockholders; no directors' or stockholders' meetings were ever held; no reports as to shares issued were ever filed because there were never any shares issued; no books or records were ever kept; and no annual license fees were ever paid subsequent to incorporation. The corporation had, however, filed its articles of incorporation with the secretary of state. This Court applied local law, refused to disregard the corporate entity, and stated: "It does *662 not follow from the fact that the corporation laws of the State of Washington were ignored subsequent to the filing of the Articles of Incorporation, that Eagle Timber had no corporate existence." Similarly, in the instant case, we conclude that Oilfield, Inc., was a viable corporate entity subsequent to its incorporation on February 14, 1983. Petitioner claimed that he did not decide to operate the waste hauling business as a corporation until sometime in May 1983. We find this testimony incredible considering the fact that petitioner asked his attorney, Thomas Olson, to reserve a corporate name in January 1983, and file articles of incorporation for the business in February 1983. The facts clearly indicate that petitioner adopted the corporate form in February 1983. As the Supreme Court stated in Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 439, 87 L. Ed. 1499, 63 S. Ct. 1132 (1943): The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that *663 purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. New Colonial Co. v. Helvering, 292 U.S. 435, 442, 78 L. Ed. 1348, 54 S. Ct. 788; Deputy v. du Pont, 308 U.S. 488, 494, 84 L. Ed. 416, 60 S. Ct. 363. In Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 77 L. Ed. 399, 53 S. Ct. 198, this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages. [Emphasis added; fn. ref. omitted.]
In the instant case, petitioner acknowledged that creation of the corporation provided the advantage of limited liability. Petitioner was aware of the inherent danger involved in transporting hazardous waste. Petitioner was concerned about potential drug use by his drivers while hauling hazardous substances. Petitioner cannot shop on both sides of the street at the same time. He cannot avail himself of the business *664 advantages of the corporate form while disregarding it in the case of its tax disadvantages. Therefore, we hold that the $ 177,761 loss is not deductible by petitioners on their individual income tax return for taxable year 1983. Section 6653(a)(1) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax in an amount equal to 50 percent of the interest on the portion of the underpayment attributable to negligence. Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that the underpayment determined by respondent was not due to negligence or intentional disregard of the rules or regulations. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Enoch v. Commissioner, 57 T.C. 781, 802-803 (1972). For taxable year *665 1982, petitioners stipulated to the correctness of respondent's disallowance of their claimed depreciation deduction in the amount of $ 63,609. Moreover, petitioner stated that he would never attempt to begin waste hauling operations prior to receiving a permit to do so. Petitioner did not receive a permit until February 1983. Petitioner also stated that the equipment he ordered in December 1982 was not completely delivered until March or April of 1983, and up until that time he was fitting the various parts together in preparation of beginning operations. Therefore, it is clear that the equipment was not placed in service in taxable year 1982. The claiming of such an inappropriate deduction constitutes negligence. Petitioners were also unable to substantiate a deduction for repairs in 1982 in the amount of $ 8,748, and omitted $ 3,600 of interest income from their return. Petitioners failed to present any evidence as to the failure to adequately report these items. Therefore, we hold that petitioners are liable for additions to tax under section 6653(a)(1) and 6653(a)(2) for taxable year 1982. For taxable year 1983, petitioners contend that they relied on their accountant, *666 Ron Purdy, and their attorney, Thomas Olson, for accounting and legal advice at every stage of the formation of Oilfield, Inc. However, Olson testified that either petitioner or Purdy recommended incorporating the waste hauling business. Purdy testified that he suggested operating the business as a sole proprietorship or subchapter S corporation, but never as a subchapter C corporation. Purdy also testified that he was not aware that petitioner's attorney had incorporated the business until he received a State tax return, presumably at a date much later than February 1983, listing the date of incorporation as February 14, 1983. In any event, Olson reserved a corporate name in January 1983, and filed articles of incorporation in February 1983, in accordance with petitioner's request. Clearly, petitioner was aware that Oilfield, Inc., was incorporated in February 1983. Therefore, we find that he was negligent in reporting that the sole proprietorship continued through June 30, 1983, so that the losses were deductible by petitioners individually instead of Oilfield, Inc. We hold that petitioners are liable for additions to tax under section 6653(a)(1) and (2) for taxable year *667 1983. With respect to tax returns the unextended due date for filing of which is after December 31, 1982, section 6661(a) imposes an addition to tax equal to 25 percent of any underpayment attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). A substantial understatement is one that exceeds the greater of either 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1). If a taxpayer has substantial authority for the tax treatment of an item on his return, the understatement is reduced by the amount attributable to such items. Sec. 6661(b)(2)(B)(i). Furthermore, if a taxpayer adequately discloses on his return the relevant facts pertaining to any tax item, the amount of the understatement is reduced by the amount of such item. Sec. 6661(b)(2)(B)(ii). Substantial authority for a position exists if the weight of authorities supporting the position is substantial when compared to the weight of the authorities contrary to the position. The taxpayer's position must be stronger than one that is arguable but fairly unlikely to prevail in court. Sec. 1.6661-3(b), Income Tax Regs. *668 In determining whether there is substantial authority, the following are considered authority under section 1.6661-3(b)(2), Income Tax Regs.: Applicable provisions of the Internal Revenue Code and other statutory provisions; regulations construing such statutes; court cases and administrative pronouncements (including revenue rulings and revenue procedures); tax treaties and regulations thereunder, and Treasury Department and other official explanations of such treaties; and Congressional intent as reflected in committee reports and statements of managers. * * *
For taxable year 1982, petitioners failed to cite any substantial authority for the positions taken on their tax return. In addition, petitioners did not satisfy the adequate disclosure requirements set forth in section 1.6661-4, Income Tax Regs. Therefore, if the the numerical thresholds of section 6661 are met, after taking into consideration the improper depreciation and repair deductions and the omission of interest income, then petitioners are liable for an addition to tax under section 6661 for taxable year 1982. Similarly, for taxable year 1983, petitioners have not cited any authority to support their *669 position that the waste hauling business was not a corporate entity for Federal tax purposes until July 1, 1983. Nor did petitioners satisfy the disclosure requirements of section 1.6661-4, Income Tax Regs. Therefore, if the numerical thresholds of section 6661 are met, petitioners are liable for an addition to tax under section 6661 for taxable year 1983. The final issue for consideration is whether petitioners are liable for an addition to tax under section 6651(a)(1) for failing to timely file their 1982 income tax return. Respondent's notice of deficiency did not mention an addition to tax under section 6651(a)(1). Respondent moved to amend his answer approximately 3-1/2 months before trial. We granted the motion for leave to amend respondent's answer. Pursuant to Rule 142(a), both parties agree that the section 6651(a)(1) issue constitutes a "new matter" and the burden of proof is on respondent. In the instant case, the 1982 tax return was stamped received by the Internal Revenue Service on November 17, 1983. At trial, respondent presented a Certificate of Assessments and Payments which stated the 1982 return was received on November 17, 1983. The Certificate of Assessments *670 and Payments also stated that an extension to file was granted to petitioners through August 15, 1983. No other extensions to file were listed on the certificate. Respondent has thus established a prima facie case, and the burden of going forward with the evidence shifts to petitioners. See Papineau v. Commissioner, 28 T.C. 54, 57 (1957). Petitioners failed to present a copy of any extensions to file beyond the August 15, 1983, extension date and presented no other convincing evidence on the late filing issue. In light of petitioners' failure to go forward with the evidence, we sustain respondent's determination with respect to the section 6651(a)(1) addition to tax for taxable year 1982. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The focal point of the parties' dispute is the date the waste hauling business commenced operations as a corporation. Several cases with similar facts set forth the proper analysis utilized to determine the date a business becomes a corporate entity for Federal tax purposes. See Skarda v. Commissioner, 27 T.C. 137 (1956), affd. 250 F.2d 429 (10th Cir. 1957); Evans v. Commissioner, T.C. Memo 1974-267; O'Neill v. Commissioner, T.C. Memo 1957-193↩.